## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DBSI, INC., *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 08-12687 (PJW) |
| WAVETRONIX LLC, an Idaho limited liability company,<br><br>       Plaintiff,<br><br>v.<br><br>CONRAD MYERS, as Trustee for the DBSI Liquidating Trust; and DBSI LIQUIDATING TRUST, a Delaware trust,<br><br>       Defendants. | Adversary Proceeding No. 10-_____ |

## COMPLAINT

Wavetronix LLC ("Wavetronix" or the "Company"), a non-debtor, by and through its attorneys, as and for its complaint ("Complaint") against Conrad Myers, in his capacity as Trustee for the DBSI Liquidating Trust (the "Trustee"), and the DBSI Liquidating Trust, a Delaware trust (the "Trust"), alleges as follows:

## NATURE OF PROCEEDING

1.  In this Adversary Proceeding, Wavetronix seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq*., and 11 U.S.C. § 105(a), and in accordance with Fed. R. Bankr. P. 7001(9) and 7003 as follows:

    a.  That Stellar Technologies LLC ("Stellar") has been dissociated as a member of Wavetronix pursuant to both the Wavetronix Operating Agreement (the "Operating

Complaint - 1

135317.01600/40192286v.1

Agreement") and Idaho law, I.C. § 30-6-101 et seq.; and that the only interest in Wavetronix now held by the Trust, as Stellar's assignee or transferee, is the transferable interest in profits and losses of Wavetronix previously held by Stellar (the "Transferable Interest");

b.     That aggregate payments of $21,155,267 made by Stellar to Wavetronix were capital contributions when made, not loans, and are properly characterized as equity investments in Wavetronix ab initio;

c.     That the Trust currently holds a 61.88% Transferable Interest (8,100,000 units) in Wavetronix; and

d.     That the Operating Agreement (Section 12.2) requires the Trustee to elect whether to continue to hold the Transferable Interest in Wavetronix or to require Wavetronix to purchase the interest held by the Trust at its present fair market value, payable in five years, as further provided by the Operating Agreement.

## PARTIES

2.     Wavetronix, an Idaho limited liability company with headquarters in Provo, Utah, designs and manufactures radar devices used to reduce traffic congestion, manage traffic flows and improve road safety.  Wavetronix is not a debtor in the DBSI bankruptcy cases.

3.     Conrad Myers is the Trustee of the DBSI Liquidating Trust and was appointed as Trustee pursuant to the terms of the Findings of Fact, Conclusions of Law and Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") [Dkt. No. 5699] (the "Confirmation Order") [Dkt. No. 5924], effective  as of October 29, 2010 (the "Effective Date"). Confirmation Order at p. 66, subsection 10B; Notice of (1) Occurrence of Effective Date of Second Amended Joint Chapter 11 Plan of Liquidation and (2) Plan Bar Dates [Dkt. No. 6749].

4.     The Trust, a trust organized under the laws of the State of Delaware, was organized pursuant to the Plan and Confirmation Order to, *inter alia*, liquidate the assets of the DBSI estate, including the Transferable Interest in Wavetronix assigned by Stellar to the Trust. Confirmation Order at p. 46, ¶ 109.

## JURISDICTION AND VENUE

5.     This Bankruptcy Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §157 and §1334 and the Confirmation Order at p. 68, Section 12.

6.     Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §1408 and §1409.

7.     This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

8.     An actual case or controversy exists concerning the matters set forth in this Complaint because the Trustee has refused to stipulate with Wavetronix (a) that Stellar has been dissociated as a member of Wavetronix and (b) that the Contributions from Stellar to Wavetronix are property characterized as equity.

9.     The Confirmation Order expressly reserved the rights and remedies set forth in this Complaint for later resolution.  Confirmation Order at p. 59, Section 8D(ii).

## FACTUAL BACKGROUND

### Formation of Wavetronix LLC

10.     In the summer of 2000, Doug Swenson ("Swenson"), David Arnold ("Arnold") and Michael Jensen ("Jensen") met and discussed forming a business to develop and market radar devices that would be used to reduce traffic congestion, manage traffic flows and improve road safety.

135317.01600/40192286v.1

11.     Arnold and Jensen, who are recognized experts in radar technology, agreed to provide management, technology, any future patents, and related expertise to the business in exchange for 40% of the initial membership interests in the Company.

12.     Stellar, a holding company organized under the laws of the State of Idaho and effectively controlled by Swenson, was created by Swenson to fund and hold equity interests in Wavetronix and a variety of other technology companies (the "Other Technology Subsidiaries"). DBSI Investments Limited Partnership, an Idaho limited partnership ("Investments"), also controlled by Swenson, owned a majority interest in Stellar.

13.     Swenson committed on behalf of Stellar that Stellar would provide all of the capital necessary for Wavetronix to develop and market its products until such time as Wavetronix could operate sufficiently with self-generated funds.   In exchange for its commitment to provide all of the necessary capital, Stellar received 60% of the initial membership interests in the Company.

14.     Swenson represented to Arnold and Jensen that Swenson and Stellar held or controlled in excess of $60 Million in cash, and would use the same as needed to adequately fund the development of Wavetronix' products and its operations, via future, long-term contributions as consideration for Stellar's 60% equity interest, until the Company reached self-sufficiency and did not need to raise additional funds.  The Operating Agreement confirms that Arnold and Jensen were non-assessable members of Wavetronix (Section 8.3).  Subsequently, in 2004, Stellar's equity interest in Wavetronix was changed to 62.31% (8,100,000 units) in connection with the establishment of an equity incentive plan and the issuance of options to key employees, such that Stellar's equity interest in Wavetronix, on a fully diluted basis, would be reduced to 54% thereafter if all of the options (2,000,000 units) were ever granted and exercised.

Complaint - 4

15. On July 21, 2000, Stellar, Arnold and Jensen organized Wavetronix under the name "Stellar Solutions LLC." On September 18, 2000, they changed its name to "Wavetronix LLC."

16. When Wavetronix was organized, the founders agreed that Arnold and Jensen would serve as the Company's sole managers (as memorialized in a subsequent Voting Agreement) and would run the Company, even though they would own only a minority equity interest in Wavetronix. To ensure that the intent of the founding members was carried out, the Operating Agreement provides at §12.1.7 for the dissociation of Stellar from Wavetronix if (i) ownership of Stellar changed by more than 5% or (ii) the control or management of Stellar changed substantially. A true and correct copy of the Operating Agreement is attached as Exhibit 1 and incorporated by reference.

**The Contributions and Promissory Notes**

17. Stellar immediately began contributing development funds (the "Contributions") to Wavetronix as Swenson/Stellar had committed.

18. Swenson, a CPA who had effective control of Stellar, served as "tax matters partner" for both Stellar and Wavetronix, and, with the assistance of his tax and accounting associates at DBSI and Stellar, for several years had control of both Stellar and Wavetronix' respective financial records and prepared their respective tax returns.

19. Initially, with Stellar's knowledge, Wavetronix recorded all Contributions in its books and records as capital contributions from Stellar to Wavetronix. Without the knowledge or approval of Arnold, Jensen or the Wavetronix Board, Swenson, acting as the Company's tax matters partner, and/or others acting under his control unilaterally changed the Contributions on the books of Wavetronix from equity to debt as of year-end 2002.

Complaint - 5

20.     On the Wavetronix 2000 and 2001 tax returns, which were prepared by Swenson and his associates (and signed by Swenson), the 2000 and 2001 Contributions are listed as equity.

21.     On the Wavetronix 2002 tax return, which was prepared by Swenson and his associates (and signed by Swenson), Swenson caused Wavetronix to recharacterize $1,400,782 in prior Contributions from equity to debt, without the knowledge or approval of Arnold, Jensen or the Wavetronix Board.  Arnold and Jensen first discovered this in November 2010.

22.     Later in 2003, after Stellar had contributed more than $6 Million to Wavetronix, John Foster, then the President of Stellar, demanded on behalf of Stellar that Wavetronix execute promissory notes for all Contributions in excess of Stellar's initial $2 Million investment in Wavetronix.

23.     Foster's demand both surprised and angered Arnold and Jensen.  The demand was inconsistent with the agreement between them and Swenson/Stellar. Arnold and Jensen would never have agreed to form Wavetronix in the first place if Stellar were to receive 60% of the equity in the Company for only the initial $2 Million investment and also be repaid all of the additional Contributions as debt, plus interest – particularly where Arnold and his management team were working for the Company at substantially sub-market salaries to help Wavetronix succeed.

24.     When Arnold complained to Swenson that Foster was altering their agreement, Swenson told Arnold not to worry about the promissory notes, but that the Contributions would have to be structured this way "for now."  Swenson represented to Arnold then, and confirmed many times thereafter, that the Contributions represented by the notes would be eliminated or forgiven in the future, so as to reinstate their original arrangement.

Complaint - 6

25.     Arnold believed that Stellar would not contribute any additional funds to Wavetronix unless he agreed to sign promissory notes on Wavetronix' behalf for all previous Contributions in excess of $2 Million.  Subsequently, Arnold was also given to understand that any additional Contributions would be very unlikely unless he signed a limited personal guaranty for some of the ostensible debt in order (he was told) to satisfy certain investors in Stellar.

26.     Arnold, an engineer without any significant training or education in business, tax or legal matters, relied on Swenson's credentials, his representations and assurances as a CPA with extensive business and tax expertise, and his various financial assurances on behalf of Stellar.  Thus, under Swenson and Stellar's undue influence and duress in the summer of 2003 (and in complete ignorance of the fraudulent tax and accounting scheme that Swenson was creating with Stellar and Wavetronix (discovered belatedly by Arnold first in 2009, and in greater measure in 2010, after acquiring additional information from the DBSI Bankruptcy Examiner, the Trustee, the IRS and Idaho regulatory authorities)), Arnold signed the first of the promissory notes  in the summer of 2003.

27.     The first note bears the effective date of January 1, 2002 (the "2002 Note"), but was not signed until the summer of 2003, long after all of the applicable Contributions had been made.  The 2002 Note is in the amount of $1,400,782.00, and represents the total Contributions made by Stellar to Wavetronix between July 24, 2001 and December 28, 2001, prior to both the 2002 date of the Note and its 2003 execution.  A true and correct copy of the 2002 Note, with its exhibits A and B, is attached as Exhibit 2 and incorporated by reference.

28.     On December 13, 2006, Stellar and Wavetronix entered into the First Amendment of the 2002 Note, modifying the maturity date from January 1, 2007, to January 1, 2008, and automatically extending the term of the 2002 Note to September 1, 2008.  A true and correct

135317.01600/40192286v.1

copy of the First Amendment to the 2002 Note is attached as Exhibit 3 and incorporated by reference.

29.     The second note bears the effective date of January 1, 2003 (the "2003 Note"), but was executed later in 2003 and after all of the applicable Contributions had been made by Stellar in 2002.  The 2003 Note is in the amount of $3,362,930.00, representing the total Contributions made by Stellar to Wavetronix between January 4, 2002 and December 30, 2002.  A true and correct copy of the 2003 Note, with its exhibits A and B, is attached as Exhibit 4 and incorporated by reference.

30.     On November 7, 2007, Stellar and Wavetronix entered into the First Amendment of the 2003 Note and modified the maturity date from January 1, 2008 to September 30, 2008.  A true and correct copy of the First Amendment to the 2003 Note is attached as Exhibit 5 and incorporated by reference.

31.     The third note bears the effective date of January 1, 2004 (the "2004 Note"), but was executed later in 2004 and after all of the 2003 Contributions had been made.  The 2004 Note is in the amount of $2,852,882.00, representing the total Contributions made by Stellar to Wavetronix between January 10, 2003 and December 24, 2003.  A true and correct copy of the 2004 Note, with its exhibits A and B, is attached as Exhibit 6 and incorporated by reference.

32.     The fourth note bears the effective date of January 1, 2005 (the "2005 Note"), but was executed later in 2005 and after all of the 2004 Contributions had been made.  The 2005 Note is in the amount of $3,716,278.00, representing the total Contributions made by Stellar to Wavetronix between January 9, 2004 and December 22, 2004.  A true and correct copy of the 2005 Note, with its exhibits A and B, is attached as Exhibit 7 and incorporated by reference.

135317.01600/40192286v.1

33.     The fifth note bears the effective date of January 1, 2006 (the "2006 Note"), but was executed later in 2006 and after all of the 2005 Contributions had been made.  The 2006 Note is in the amount of $4,764,249.00, representing the total Contributions made by Stellar to Wavetronix between January 6, 2005 and December 20, 2005.  A true and correct copy of the 2006 Note, with its exhibits A and B, is attached as Exhibit 8 and incorporated by reference.

34.     The sixth note bears the effective date of January 1, 2007 (the "2007 Note"), but was executed later in 2007 and after all of the 2006 Contributions had been made.  The 2007 Note is in the amount of $4,663,358.00, representing the total Contributions made by Stellar to Wavetronix between January 4, 2006 and December 8, 2006.  A true and correct copy of the 2007 Note, with its exhibits A and B, is attached as Exhibit 9 and incorporated by reference.

35.     On January 16, 2008, Stellar and Wavetronix entered into the First Amendment to the 2007 Note and modified the maturity date from January 15, 2008 to September 30, 2008.  A true and correct copy of the First Amendment to the 2007 Note is attached as Exhibit 10 and incorporated by reference.

36.     In 2007, Stellar made additional Contributions in the amount of $394,788.00 to Wavetronix, but did not request Wavetronix to sign a promissory note.

37.     Purportedly to secure the Contributions represented by the six promissory notes, as amended, described above (collectively, the "Notes"), Stellar required, subsequent to the original 2002 Note, that Wavetronix execute a series of security agreements (the "Security Agreements"), one for each of the Notes, pursuant to which Wavetronix purportedly granted a security interest to Stellar in all of Wavetronix' accounts, goods, instruments, investment property, deposit accounts and intangibles (the "Collateral").  Because the value of the Collateral

135317.01600/40192286v.1

was much less than even the amount represented by the 2002 Note, Stellar was seriously under-secured for all of the Contributions, but more particularly after 2002.

38.     Inasmuch as each of the afore-described promissory notes (collectively, the "Notes"), and each of the Security Agreements, were prepared and signed long after Wavetronix had already received the Contributions applicable to each, Wavetronix received no new consideration for executing those documents.

39.     All of the Notes were forced upon Wavetronix as part of an elaborate tax and securities fraud scheme conceived by Swenson, DBSI and Stellar to defraud their investors, as well as Wavetronix, Arnold and Jensen.  The bogus, after-the-fact "debt" structure was designed by Swenson, et al to dupe Arnold and Jensen and use Wavetronix to cover up, and provide an appearance of legitimacy to, a variety of illegal acts intended to avoid taxes and mislead investors.  Stellar procured the Notes and Security Agreements from Wavetronix and Arnold by way of fraud, duress and undue influence.  Moreover, such acts by Stellar constituted a breach of its fiduciary duty owed to Wavetronix and its minority owners by virtue of Stellar's position as a partner and as majority owner of Wavetronix, and also by virtue of the special standard of professional care owed to Wavetronix by the Stellar CPA's who served as Wavetronix CPA's for several years in connection with the maintenance of the Company's financial records and the preparation of  its financial statements and tax returns.

40.     Each of the Notes provides for the payment of simple interest at 11% per annum and provides for payment of all principal and interest in five years (except the 2007 Note, which provides for payment in slightly more than one year).  None of the Notes provided for any periodic payment of interest or principal.

41.     In late summer 2007, Wavetronix obtained a line of credit from Wells Fargo Bank, secured by a senior lien on all of the assets of Wavetronix.  In order for Wavetronix to obtain the line of credit, Stellar subordinated its interest in the Collateral and its claims under the Notes to Wells Fargo's line of credit. Wells Fargo terminated that line of credit in early 2009 as a consequence of the DBSI bankruptcy.

42.     Other than a voluntary payment to Stellar of $80,000 in 2009 to pay the salary of Paul Judge, then Stellar's President, Wavetronix has not repaid any of the Contributions, or any interest on them.  Paul Judge requested the payment from Wavetronix in 2009 to cover his salary needs, since Investments had previously stopped advancing any funds to Stellar.

43.     On December 30, 2008, on information and belief, the attorneys for the DBSI bankruptcy estate and the creditors' committee caused Paul Judge, in his capacity as President of Stellar, to deliver notices to Wavetronix notifying Wavetronix that the 2002 and 2003 Notes were in default and purporting to give Wavetronix 10 days to cure the default (the "Notices"). On information and belief, the Stellar Board did not authorize Mr. Judge to send the Notices. True and correct copies of the Notices are attached as Exhibits 11 and 12 and are incorporated by reference. Prior to December 30, 2008, Stellar had never requested, let alone demanded, any payment regarding any of the Contributions.  To the contrary, just months prior to DBSI's bankruptcy filing in 2008, Stellar and Wavetronix tentatively agreed to amend all of  the Notes for the purpose, among other things, of extending their due dates for an additional five years.

44.     Wavetronix did not make any payments to Stellar after the Notices were received (other than the $80,000 payment described in ¶ 40 above).   Neither Stellar nor the Trustee has taken any further or other action with respect to the 2002 or 2003 Notes.

Complaint - 11

45.     Neither the Trustee nor Stellar has taken any action with respect to the 2004, 2005, 2006, or 2007 Notes or the Security Agreements, even though the Notes included cross default provisions.

46.     By letter dated October 28, 2010 (the "October 28 Letter"), the Chapter 11 Trustee in the DBSI, Inc. bankruptcy purported to cancel "all of the accrued and unpaid interest owed by Wavetronix to Stellar and an amount of principal indebtedness such that, as of the Effective Date, there will be $12 million of principal indebtedness outstanding." A true and correct copy of the October 28 Letter is attached hereto as Exhibit 13 and is incorporated by reference.

**Dissociation**

47.     On November 10, 2008, DBSI, Inc. and its affiliated debtors (the "Debtors") filed Chapter 11 petitions.

48.     On August 31, 2009, James R. Zazzali was appointed as the Chapter 11 Trustee of the Debtors and thereafter exercised management control of Stellar, by *inter alia*, (a) in November 2008 securing a temporary restraining order to prevent certain parties from interfering with the Debtors' control rights over Stellar and its assets; and (b) subsequently, on June 30, 2010, filing an involuntary Chapter 11 petition for DBSI Investments, the majority owner of Stellar, to further exercise the Trustee's control over Stellar. On or about May 27, 2010, Zazzali changed the manager of Stellar on the records of the State of Idaho to William L. Rich as the representative of the Chapter 11 Trustee.

49.     The substantial change in the management or control of Stellar was done without the consent of the other members of Stellar and without regard to the provisions of the Stellar Operating Agreement or the applicable provisions of the Wavetronix Operating Agreement.

Complaint - 12

50.     The Debtors filed a Joint Plan of Liquidation, as amended, and obtained confirmation of the Plan on October 26, 2010.  The Plan became effective on October 29, 2010 (the "Effective Date").

51.     Pursuant to the terms of the Plan and the Confirmation Order, Stellar was substantively consolidated into the DBSI bankruptcy entities as part of the aggregate DBSI bankruptcy estate, effective as of November 10, 2008, thereby rendering Stellar a "debtor" under Chapter 11 as of said date.

52.     On the Effective Date, Stellar's interest in Wavetronix was assigned to the Trust – without the consent of the other members of Wavetronix and without regard to the provisions of the Operating Agreement.

53.     The Confirmation Order effected the transfer of more than 5% of the beneficial interest in Stellar to the Trust – without the consent of all of the other Members of Wavetronix and without regard to the provisions of the Operating Agreement.

54.     The Trustee dissolved Stellar as an Idaho limited liability company shortly after the Effective Date.

55.     Following the transfer of all of Stellar's Transferable Interest in Wavetronix to the Trust, and following the dissolution of Stellar, the other members of Wavetronix acknowledged Stellar's multiple acts of dissociation, both prior to and as a result of the Plan and Confirmation Order, formally confirmed Stellar's dissociation as a member of the Company, and expelled Stellar as a member of the Company by unanimous consent, pursuant to the Operating Agreement and I.C. 30-6-602(4)(a) and (d).

## FIRST CAUSE OF ACTION
### (Declaration that the Trust as Assignee, has no greater interest in Wavetronix than Stellar's Dissociated Membership Interest in Wavetronix)

56.     Wavetronix repeats and re-alleges all of the foregoing allegations.

57.     Section 12.1 of the Operating Agreement provides in relevant part as follows:

12.1   <u>Dissociation</u>.  A Person shall cease to be a Member upon the happening of any of the following events:

12.1.1  The Member's becoming a Bankrupt Member;

…

12.1.4  In the case of a Member that is a separate Organization other than a corporation, the dissolution and commencement of winding up of the separate Organization;

…

12.1.7  In the case of a Member that is an Organization, any transfer (or cumulative series of transfers) in excess of 5% of the beneficial interest in a Member or any substantial change in the management or control of the Member without the consent of all of the other Members.

58.     Stellar has been dissociated from Wavetronix in each of the following ways:

a.      The Plan and Confirmation Order caused Stellar to became a Bankrupt Member by substantively consolidating Stellar into the DBSI bankruptcy case;

b.      Stellar has been dissolved;

c.      The Plan and Confirmation Order transferred in excess of 5% of the beneficial interest in Stellar and substantially changed the management and control of Stellar without the consent of all of the other Members;

d.      Stellar has been expelled as a member of Wavetronix by the unanimous consent of the remaining members following the transfer of all of Stellar's Transferable Interest in Wavetronix to the Trust; and

Complaint - 14

e.     Stellar has been expelled as a member of Wavetronix by the unanimous consent of the remaining members following the dissolution of Stellar.

59.     Pursuant to 11 U.S.C. § 105, and as a matter of law under Idaho Code § 30-6-602 and the Operating Agreement, Wavetronix is entitled to a declaratory judgment that (a) Stellar became a dissociated member for each of the reasons listed above; (b) that the Trustee has no Management Rights in Wavetronix, as defined in the Operating Agreement; and (c) that the Trustee holds only a Transferable Interest in Wavetronix as an Assignee, as those terms are defined by Idaho law and the Operating Agreement.

## SECOND CAUSE OF ACTION
### (Declaration that Contributions Were Equity When Made)

60.     Wavetronix repeats and re-alleges all of the foregoing allegations.

61.     Stellar, Swenson, Arnold and Jensen intended all of the Contributions, including those itemized in the subsequent Notes, to be equity investments in Wavetronix at the time the Contributions were made.  There exists no resolution in any of the minutes of Wavetronix' Board meetings, or in any written consent of the Board or its Members, ever authorizing any borrowing from Stellar or ever approved treating the Contributions as debt on Wavetronix' books or tax returns.

62.     At the time each and every Advance was made by Stellar to Wavetronix, the parties did not enter into any agreement evidencing a debt or any obligation of Wavetronix to repay the Contributions.  In each instance a Note was executed, at the insistence of Stellar, after at least 12 months of Contributions were made and only then was the total amount of Contributions for the 12 month period known.

63.     At the time each of the Contributions was made, no documentation was prepared by Stellar or executed by Wavetronix that required repayment by any maturity date or in

Complaint - 15

accordance with any payment schedule. Only later, after a year's worth of Contributions had been made, did Stellar prepare a Note and insist that the Note be executed by Wavetronix.

64.     At the time each of the Contributions was made, no documentation was prepared by Stellar or executed by Wavetronix to indicate that the parties intended that any interest would accrue on the Contributions or that Wavetronix would make any interest payments. Even after Wavetronix, at Stellar's insistence, executed Notes prepared by Stellar, the Notes did not provide for periodic payment of interest.

65.     At the time each of the Contributions was made, Stellar knew that Wavetronix was operating at a loss and was insolvent (if the Contributions are treated as debt). Stellar understood that any return on the Contributions would not occur unless and until Wavetronix became sufficiently profitable to distribute profits (if at all), and if Wavetronix never became profitable, Stellar would never receive any return on the Contributions.

66.     Wavetronix was less than thinly capitalized (if the Contributions are treated as debt). Its books and records indicated that it was insolvent at the time of each Advance. No rational outside lender would have advanced funds to Wavetronix on terms similar to those set forth in the Wavetronix/Stellar notes.

67.     Stellar's purported security interest in all of Wavetronix' assets was woefully inadequate to secure the Contributions, and Stellar knew it was significantly undersecured.

68.     Given its adverse financial circumstances (if the Contributions are treated as debt), Wavetronix could not have replaced or refinanced the Contributions with funds borrowed from a non-insider third party on any customary, market-based borrowing terms, let alone the terms on which Stellar purported to make the Contributions.

69.     Stellar subordinated its security interest in the Collateral and its right to repayment of the Contributions to the Wells Fargo line of credit.

70.     Developed products are the principal capital assets of early stage technology companies like Wavetronix.  Such companies typically require equity financing for such R & D capital investments, inasmuch as such start-ups do not generally qualify for debt financing. Similarly, the Contributions to Wavetronix were used primarily to pay for development of the Company's technology.

71.     Wavetronix did not provide for a sinking fund – or any other means for that matter – to provide for repayment of the Contributions.  Stellar would be repaid the Contributions, as equity distributions, only if, when and to the extent that Wavetronix grew its revenues and produced sufficient cash to pay its other obligations and then got to a position where it could make distributions to its members from its net profits.

72.     Swenson, acting on behalf of Stellar, also made commitments to the Other Technology Subsidiaries that Stellar would provide their necessary funding in exchange for equity in each of the subsidiaries.  In fact, on information and belief, Stellar followed through with that commitment and converted the debt of the Other Technology Subsidiaries into equity, outright forgave their debt, or converted their debt to equity at such a low conversion rate that it had the effect of forgiveness of debt.  Stellar's forgiveness of debt or conversion of debt to equity of the Other Technology Subsidiaries evidences Swenson's and Stellar's original intent to fund all the Technology Subsidiaries, including Wavetronix, in the same manner – with equity investments, not debt.

73.     Pursuant to this Court's powers of equity, Wavetronix is entitled to a declaratory judgment that (a) each of the Contributions, including those represented by the Notes, was, in

fact, an equity investment in Wavetronix at the time the Advance was made, (b) that the Contributions to Wavetronix, including the Contributions represented by the Notes, are properly characterized as equity rather than debt, and (c) that the Notes and the Security Agreements are null and void and should be disregarded.

### THIRD CAUSE OF ACTION
### (Declaration that the Trust Holds 61.88% Transferable Interest)

74.     Wavetronix repeats and re-alleges all of the foregoing allegations.

75.     Stellar committed to provide all of the capital necessary for Wavetronix to develop and market its products until Wavetronix could operate sufficiently with self-generated funds.

76.     In exchange for performing that commitment, the parties agreed that Stellar would receive 60% of the membership interests in the Company.

77.     Immediately before it became dissociated as a result of the Confirmation Order, Stellar held a 61.88% membership interest in Wavetronix, as the result of certain adjustments in 2004 described above.

78.     After it became dissociated, Stellar held a 61.88% Transferable Interest in the profits and losses of Wavetronix.

79.      In accordance with the terms of the Plan and the Confirmation Order, Stellar transferred its Transferable Interest in Wavetronix to the Trust, and the Trust now holds a 61.88% Transferable Interest in the profits and losses of Wavetronix, subject to future dilution.

80.     Characterization of the Contributions as equity does not cause an increase in the percentage of the Transferable Interest held by the Trust, inasmuch as this is an acknowledgement of the original funding agreement, not a subsequent, mutually agreed upon conversion of debt to equity.

Complaint - 18

81.     Accordingly, Wavetronix is entitled to a declaratory judgment that the Trust currently holds a 61.88% Transferable Interest in Wavetronix, as the same may be diluted in the future.

## FOURTH CAUSE OF ACTION
### (Declaration that Trustee Must Make Election)

82.     Wavetronix repeats and re-alleges all of the foregoing allegations.

83.     Section 12.2 of the Operating Agreement provides, in relevant part, as follows:

12.2    Purchase of Dissociated Member's Membership Interest.  Upon Dissociation of a Member, when the Remaining Members elect to continue the business of the Company, the Dissociated Member or its legal representative, as the case may be, shall, subject to the provisions of the Act, elect one of the two following provisions:

12.2.1  The Dissociated Member's Membership Interest shall be purchased by the Company for a purchase price equal to the aggregate fair market value of the Member's Interest determined according to the provisions of Section 12.3.  The purchase price of such interest shall be paid by the Company to the Member in cash within 60 days of determination of the aggregate fair market value or, at the Company's option, said debt may be evidenced by a promissory note bearing interest paid monthly at the Prime Rate, which shall be due and payable upon the earlier of (i) expiration of five years or (ii) the sale or other Disposition of all of the Property; or

12.2.2  The Dissociated Member or Assignee of Dissociated Member's Interest, shall hold the Dissociated Member's Membership Interest [the Transferable Interest] as an Assignee.

Complaint - 19

84.     The remaining Members of Wavetronix have elected to continue the business of the Company, and the Company has advised the Trustee of that election.

85.     Section 12.2 of the Operating Agreement requires the Trustee to make an election on behalf of the Trust whether to continue as an Assignee holding a Transferable Interest or to require the Company to purchase the Trust's interest.  The Company has requested that the Trustee make that election within a reasonable time, not to exceed 30 days.

86.     Accordingly, Wavetronix is entitled to a declaratory judgment that (a) the Trust must make the election required by Section 12.2 of the Operating Agreement within a reasonable time, and (b) the Trust has no legal or equitable right to take any other action to liquidate or otherwise realize the value of the Transferrable Interest.

WHEREFORE, Wavetronix respectfully requests that this Bankruptcy Court:

Enter a declaratory judgment as follows:

a.     that (i) Stellar has become a dissociated member of Wavetronix; (ii) that the Trustee has no Management Rights in Wavetronix, as defined in the Operating Agreement; and (iii) that the Trustee holds only a Transferable Interest in Wavetronix as an Assignee, as those terms are defined by Idaho law and the Operating Agreement;

b.     that (i) each of the Contributions, including those represented by the Notes, was, in fact, an equity investment in Wavetronix at the time the Advance was made; (ii) that the Contributions to Wavetronix, including the Contributions represented by the Notes, are properly characterized as equity rather than debt; and (iii) that the Notes and the Security Interest are null and void and should be disregarded in their entirety.

c.     that the Trust currently holds a 61.88% Transferable Interest in Wavetronix;

Complaint - 20

d. that the Trust must make the election required by Section 12.2 of the Operating Agreement within a reasonable time;

e. that the Trust has no equitable or legal right to realize the value of its Transferrable Interest in Wavetronix except as provided by Section 12.2 of the Operating Agreement; and

f. Award Wavetronix its costs and attorneys fees associated with this action.

g. Provide such other or further relief as the Court deems just and equitable.


Dated: December 3, 2010                    **BLANK ROME LLP**


*/s/ Bonnie Glantz Fatell*
Bonnie Glantz Fatell (DE No. 3809)
Victoria Guilfoyle (DE No. 5183)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

and

William Fillmore, Esquire
Joseph Hepworth, Esquire
Fillmore Spencer, LLC
3301 North University Avenue
Provo, Utah 84604
Tel.: (801) 426-8200
Fax: (801) 426-8208

*Counsel to Wavetronix LLC*